STATE, Respondent, *v.* INGERSOLL, Appellant.

(No. 6,708.)

(Submitted July 1, 1930. Decided July 19, 1930.)

[292 Pac. 250.]

*Mr. Wilbur S. Eaton,* for Appellant, and *Mr. Lester H. Loble* and *Mr. Hugh R. Adair,* of Counsel, submitted a brief; *Mr. Eaton* and *Mr. Adair* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, *Mr. S. R. Foot,* Assistant Attorney General, *Mr. E. G. Toomey,* Special Prosecutor, *Mr. Geo. W. Padbury, Jr.,* County Attorney, and *Mr. A. P. Heywood,* Assistant County Attorney, for the State, submitted a brief; *Mr. Toomey* argued the cause orally.

HONORABLE THEODORE LENTZ, District Judge, sitting in place of MR. JUSTICE GALEN, disqualified, delivered the opinion of the court.

Defendant was convicted of grand larceny and appeals from the judgment and order denying his motion for a new trial. S. J. Madole, a co-defendant, pleaded guilty and was sentenced to serve a term in state's prison. At the trial Madole was a witness for the state and testified that on September 19, 1929,

at the defendant's dude ranch, he and the defendant rounded up and butchered the calf alleged to have been stolen, which was the property of William Steinbach; that after cutting out the brand, the defendant concealed the hide in the vault of an old toilet on defendant's ranch; that on the same day defendant and Madole brought the veal to Helena and sold it to Eddy Gallivan, proprietor of the Eddy Café.

Defendant strongly urges that the evidence tending to corroborate the testimony of Madole, the alleged accomplice, is insufficient to satisfy the requirements of section 11988, Revised Codes of 1921.

Disregarding Madole's testimony, the record shows, without contradiction, that about ten days before September 19, 1929, the date of the alleged killing, the defendant, Ingersoll, although he owned no cattle, arranged with Eddy Gallivan to deliver some veal to apply on a debt defendant owed to Gallivan, and stated further that the debt would be settled in full when he sold his cattle; that on September 19, 1929, the defendant and Madole delivered a veal to Gallivan in Helena. When the stock inspector went to defendant's ranch later in the fall to investigate the theft, defendant asserted no cattle had been killed on his place. After some search the inspector found the green hide of the animal in question, the property of Steinbach, in the vault of the toilet on defendant's ranch. The brand had been cut out of the hide which was found. After the hide was found, defendant then stated he thought "someone had done some squealing" and asked to talk to the inspector privately. When asked where he had obtained the veal he had sold to Gallivan, defendant told the inspector he procured it from his brother Rufus and that it was slaughtered out on the Dearborn and not on defendant's ranch. At the trial defendant admitted this was a false statement, and that he did not get it from his brother Rufus. When asked by the inspector why he had first denied there had been any slaughtering on his ranch, defendant replied that he desired to first find out who had done the squealing.

Without quoting from the record further, it is plain that there is sufficient corroboration of the accomplice to satisfy the requirements of the statute. (*State* v. *Stevenson,* 26 Mont. 332, 67 Pac. 1001; *State* v. *Biggs,* 45 Mont. 401, 123 Pac. 410.)

It is also urged that a new trial should have been ordered ▮ because of the misconduct of certain jurors, and in support thereof there are presented the affidavits of Jurors Hooper and Flynn. Juror Hooper made affidavit that he was influenced to vote for a verdict of guilty by reason of statements he had heard out of court, concerning the defendant, prior to the time he was called as a juror; that, if he had not heard said statements, he would have had a reasonable doubt as to the guilt of the defendant.

The court plainly instructed the jury that the facts of the case must be determined from the evidence and from that alone. In substance, the juror reveals by his affidavit that when called as a juror he did not have an unbiased mind by reason of statements he heard out of court before the trial; that, notwithstanding, he qualified as a juror, and in defiance of the instructions of the court, he considered these statements heard out of court, prior to the trial, in arriving at his verdict. This is a plain attempt on the part of the juror to impeach his own verdict in respect to matters essentially inhering in such verdict. This court has uniformly and repeatedly held that affidavits of jurors cannot be considered for such purpose. (*State* v. *Beesskove,* 34 Mont. 41, 85 Pac. 376; *State* v. *Brooks,* 23 Mont. 146, 57 Pac. 1038; *State* v. *Wakely,* 43 Mont. 427, 117 Pac. 95; *State* v. *Asher,* 63 Mont. 302, 206 Pac. 1091; *State* v. *Giess,* 77 Mont. 62, 249 Pac. 573.) The mere fact .that the alleged misconduct is charged to have occurred outside the jury-room does not affect the rule, according to the weight of authority. (See 46 C. J. 356.)

But were it permissible to give consideration to the affidavits the result would not be different. The facts set forth in the first affidavit of Hooper were denied by the person who was alleged to have made the statements to him. Hooper thereupon made another affidavit, repudiating the state-

ments made in the first, setting forth in the second that the same person had made different statements concerning the defendant at a time different from that named in the first affidavit. Hooper's affidavits, considered together, are so inherently weak and disclose such inconsistency that the court in any event would have been justified in disregarding them. His second affidavit in effect admits the falsity of the statements contained in the first. The rule is that in passing upon a motion for a new trial upon the alleged incompetency of a juror the lower court is called upon to exercise a sound legal discretion. In the absence of a clear showing of abuse of discretion in this regard, the appellate court will not interfere. (*State* v. *Mott*, 29 Mont. 299, 74 Pac. 728.)

Juror Flynn's affidavit is as follows: "Paul Flynn, being first duly sworn on oath deposes and says: That he was a juror in the last trial of the above entitled case; that during the actual course of the trial, after the trial had commenced and before the case was given to the jury, this affiant heard the following conversations on the Main Street of the City of Helena: 'He killed twenty of Herrin's sheep and his brother Rufus makes his living stealing cattle,' and 'they should have got him long ago as this isn't the first calf he's got by a long shot'; that this affiant knew because of the reference to 'Rufus' that this conversation was about and relative to the defendant Hugh Ingersoll; that this affiant does not know the identity of the two persons who carried on this conversation, as he did not look back as he heard the same; that said conversation led affiant to believe that cattle stealing was practiced extensively by the defendant Hugh Ingersoll, and influenced and prejudiced him in arriving at his verdict as to the guilt or innocence of said defendant during the last trial of the above entitled case."

The defendant does not contend that this was intentional misconduct of third persons in an effort to influence this juryman. Flynn did not even see the persons making the remark. For all he knew, and so far as the record shows, it may have come from a lunatic or any other utterly irresponsible source.

The trial court was amply justified in disregarding this affidavit as too fanciful for serious consideration.

Defendant further insists he is entitled to a new trial because of newly discovered evidence material to the defense which could not, with reasonable diligence, have been discovered and produced at the trial. He filed affidavits as to the proposed testimony of several witnesses, but in his brief urges only that of Mrs. Loretta Butler.

At a former trial of this cause, in which the jury disagreed, the defendant moved for a continuance because of the absence of this same Mrs. Butler. The state admitted that the witness, if present in court, would testify as set forth in the affidavit for continuance, and the motion was denied. At the second trial, being the one now under consideration, no subpoena was issued for Mrs. Butler, and no motion for continuance because of inability to obtain her attendance as a witness was made, and no application was made to take her deposition. Under these circumstances, it seems plain that the evidence is not newly discovered and that the defendant did not exercise that degree of diligence required by the law to entitle him to a new trial because of being deprived of the testimony of Mrs. Butler. (*State* v. *Matkins*, 45 Mont. 58, 121 Pac. 881; *Huffine* v. *Lincoln*, 53 Mont. 474, 164 Pac. 888.)

Howard Ingersoll, brother of the defendant, and Edna B. Gillies each attended the trial. They were not called as witnesses by the defendant, and no showing is made as to why they were not called or that their proposed evidence is newly discovered.

Much space in the brief is devoted to a discussion of alleged error in the failure of the jury to find in their verdict the value of the animal alleged to have been stolen. The information charges the stealing of a calf of the value of $30, and the court instructed the jury that in order to convict the defendant of grand larceny they must find from the evidence that he stole a live animal. Since section 11371 of the Revised Codes of 1921 makes the stealing of a calf grand larceny,

regardless of value, it of course was not necessary for the jury to find in their verdict the value of the animal stolen.

There are a number of assignments of alleged error in improperly admitting evidence. They have all been carefully examined and we find no merit in them, and no useful purpose would be served by discussion in detail of these various assignments.

After a careful and painstaking examination of the entire record, we find the evidence, if believed by the jury, is ample to sustain the verdict. The defendant had a fair trial and no reversible error was committed. The judgment and order are therefore affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, FORD and ANGSTMAN, concur.

Rehearing denied September 26, 1930.